IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:12-CV-136-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| $307,970.00, IN U.S. CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the government's motion to compel responses to its special interrogatories ("SIs"), served on claimants Apolinar Garcia-Ancelmo ("Garcia-Ancelmo"), Cirila Garcia ("Garcia"), and Lucia Yasmin Covarrubias ("Covarrubias")[1] pursuant to Rule G(6) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture, and motion to stay its obligation to response to claimants' motion to dismiss (DE 34). The matter has been fully briefed and issues raised are ripe for ruling. For reasons stated, the court will grant in part and deny in part the government's motion to compel and grant the government's motion to stay.

**BACKGROUND**

The government initiated this civil forfeiture action on July 12, 2012, by filing a complaint for forfeiture *in rem* against $307,970.00 in U.S. currency, to enforce 21 U.S.C. § 881(a)(6). The government alleges that the defendant property was used or intended to be used in exchange for controlled substances, represented proceeds of trafficking in controlled substances, or was used or

---

[1] These three claimants are husband, wife, and daughter, respectively.

intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq.

Attached to the complaint was the declaration of Harold Jordan, a special agent with the Drug Enforcement Administration ("DEA"), in which he states as follows. On February 16, 2012, Sergeant Matt Miller of the Wayne Count Sheriff's Office stopped a 2002 Mazda Tribute – later determined to be registered to claimant Covarrubias – near the intersection of Hare Road and Tommy's Road in Goldsboro, North Carolina, after observing it cross the double yellow center line and the solid white line on the shoulder. The Tribute was being driven by claimant Garcia-Ancelmo, a farm laborer. Claimant Garcia-Ancelmo gave Sergeant Miller permission to search the vehicle. Sergeant Miller saw a laundry basket in the rear cargo area of the car containing a large black trash bag. He opened the rear door to access the cargo area, partially opened the trash bag and saw the defendant currency inside. He called for additional units to assist, and Deputy R. Hatch arrived and assisted in an inventory of the funds, which was later determined to be in the amount of $307,970.00. Claimant Garcia-Ancelmo was handcuffed for officer safety and told by Sergeant Miller that he was being detained but was not under arrest. Claimant Garcia-Ancelmo denied ownership of the currency, stating that he was he was being paid $1,000.00 to deliver the money. He also told Sergeant Miller he would like to make a deal, and finally told Sergeant Miller to "just take the money" and spend it.

On July 31, 2012, the government filed an amended complaint, correcting only an allegation as to where the defendant funds were seized. On August 20, 2012, claimants Covarrubias and Garcia filed verified claims alleging ownership and possessory interests in the seized funds. On August 29, 2012, claimant Garcia-Ancelmo filed a verified claim, also alleging an ownership and possessory

2

interest in the funds.

On January 28, 2013, claimants filed a motion to dismiss the government's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In response, on February 11, 2013, the government filed notice of automatic stay of its time to file a response pursuant to Rule G(6)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture until 21 days after claimants answered ("SIs") served on them pursuant to Supplemental Rule G(6).[2] The same day the government also filed a motion to amend its complaint. Among other things, the government's proposed second amended complaint sought to include the declaration of DEA Special Agent Gilbert Trillo, who was working undercover on February 15, 2012, wherein he states that claimant Garcia-Ancelmo was supposed to deliver the currency to him, and had him speak on the phone with an indivdual claimant Garcia-Ancelmo referred to as his "boss."

On March 5, 2013, claimants filed a motion to stay discovery, including a stay of their obligation to reply to the government's SIs, pending resolution of the government's motion to amend and claimant's motion to dismiss. By order entered May 22, 2013, the court denied the government's motion to amend and granted in part and denied in part claimant's motion to stay discovery, directing claimants to respond to the government's SIs within ten (10) days but granting a stay of all other discovery.

On June 14, 2013, the government filed a motion to compel and to stay response to claimants' motion to dismiss. The government contends that claimants' responses to SIs 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 15 are insufficient. The government also requests that its obligation to respond to claimants' motion to dismiss be stayed until twenty-one (21) days after claimants "fully

---

[2] The court will refer to Supplemental Rule G simply as "Rule G."

3

respond" to the government's SIs. Pl.'s Mot. to Compel 1.

## COURT'S DISCUSSION

A.   Standard of Review

Rule G governs forfeiture actions *in rem* arising from a federal statute. Fed. R. Civ. P. Supplemental Rule G(1). "To the extent that this rule does not address an issue, Supplemental Rules C and E and the Federal Rules of Civil Procedure also apply." Id. Rule G(6)(a) provides that "[t]he government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed." The advisory committee notes explain that Rule G(6) exists "to permit the government to file limited interrogatories at any time after a claim is filed to gather information that bears on the claimant's standing."

B.   Analysis

In this case, the government propounded the same sixteen interrogatories to each claimant pursuant to Rule G(6). Where the government agrees that claimants satisfactorily answered SIs 1, 2, 3, and 16, these are not at issue. The remaining interrogatories relate to matters such as the circumstances surrounding claimant's acquisition of and actions with the defendant currency, information that would support claimants' claim to the currency, whether there are any other owners of the currency and the nature of claimants' possession of any such portion, and whether claimants have been involved in prior seizures. Claimants responded to SI 4, but the government contends that claimants' answers to SI 4 are insufficient. Claimants object to the remaining interrogatories and provide no answers, except to note their relationships to one another in partial response to SI 9. As both sides note, the issues raised in the instant motion to compel are questions of first impression

4

in this district, on which there is no Fourth Circuit authority.

Claimants argue that the answers sought by the government are outside the scope of Rule G(6) as they assert they have met their burden to establish standing at the pleading stage of a case, where this case is now. Claimants note that the purpose of SIs is to allow the government to collect information related to a claimant's standing. They contend that because they have already established standing, the governments motion to compel seeks to prematurely force claimants to prove the merits of their case.

Claimants cite to the Fourth Circuit's unpublished decision of United States v. Munson, for the proposition that in order to establish Article III standing, a claimant need not prove the merits of his or her underlying claim but must only show a "colorable interest" in a portion of the defendant property. 477 F. App'x 57, 62-63 (4th Cir. 2012). They also cite to a recently decided Seventh Circuit case, United States v. Funds in the Amount of $574,840, for the proposition that standing is easily established at the pleading stage. 719 F.3d 648, 651 (7th Cir. 2013). The Seventh Circuit determined that "[a]t the pleading stage Article III standing is something to be alleged, not proved," and that "[g]enerally when a pleading alleges facts that if true confer Article III standing, the court's focus should move immediately to the merits." Id. Thus claimants assert that their sworn allegations are more than enough to establish standing in this case, which is currently at the pleading stage. Therefore claimants contend the government's SIs go beyond an attempt to establish standing and constitute premature exploration into the merits of the case.

Claimants' argument is unpersuasive. While the Article III standing requirement may be

5

undemanding at the pleading stage[3], assuming, *arguendo*, that claimants have already met that requirement, the law is clear that standing is not an issue only at the pleading stage. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (standing must be supported with the manner and degree of evidence required at each successive stage of litigation). Rule G provides that the government may move, at any time prior to trial, to strike a claim or answer because a claimant lacks standing. Fed. R. Civ. P. Supplemental Rule G(8)(c)(i). Such motion may be presented as a motion for judgment on the pleadings, as a motion for summary judgment, or as a motion to determine after evidentiary hearing whether claimant has established standing by a preponderance of the evidence. Fed. R. Civ. P. Supplemental Rule G(8)(c)(ii)(B); United States v. $14,800.00 In U.S. Currency, ELH-11-CV-3165, 2012 WL 4521371, at *4 (D. Md. Sept. 28, 2012). If such a motion is made, it must be decided before deciding any motion to dismiss by a claimant. Fed. R. Civ. P. Supplemental Rule G(8)(c)(ii)(A).

Rule G thus provides the government with a mechanism by which to accelerate the question of standing. Even assuming that claimants' sworn assertion of ownership successfully establishes standing sufficient to survive a motion to dismiss, that assertion may not be sufficient to establish standing by a preponderance of the evidence at hearing. See United States v. $104,250.00 in United States Currency, --- F.Supp.2d ----, 2013 WL 2357787 at *2 (D. Md., 2013) ("[T]he drafters of Rule G(6) intended the special interrogatories to provide an efficient means of testing the truthfulness of the Claimant's claim to have a real interest in the defendant property."). Accordingly claimants'

---

[3] It is worth noting that district courts within the Fourth Circuit have held that Article III standing is not so easily established as the Seventh Circuit determined it is. See United States v. Various Vehicles, Funds, & Real Properties Described in Attachment A, CA 2:11-1528-DCN-SVH, 2011 WL 6012424, at *2 (D.S.C. Oct. 25, 2011) ("Generally, a bare assertion of ownership, even under oath, is insufficient to establish standing in a civil forfeiture proceeding."); United States v. Real Property Located at 5201 Woodlake Drive, 895 F.Supp. 791, 793 (M.D.N.C. 1995) (same).

argument that the government's motion to compel is improper where they claim to have sufficiently established standing for the pleading stage misses the mark. The court thus will analyze the SIs propounded by the government in more detail to determine whether they are proper under Rule G(6). In so doing, the court notes that permissible interrogatories as to a claimant's relationship to the defendant property may encompass more than just the type of interest asserted in the property. United States v. $133,420.00 in United States Currency, 672 F.3d 629, 642-43 (9th Cir. 2012).

In SI 4, the government asked claimants to describe the nature of their ownership interests in the defendant currency. Claimants simply responded that the funds are "profits from lawful business ventures" that they are involved in together. Such a response is inadequate. Cf. $104,250.00 in U.S. Currency, 2013 WL 2357787 at *2 (description in claimant's amended claim of defendant currency as proceeds from personal investments in the entertainment industry and proceeds from claimant's mother's estate was essentially a bald assertion of ownership and therefore insufficient). Claimants are directed to give a full response to this interrogatory.

SIs 5, 7, and 9 all largely relate to the circumstances surrounding claimants' acquisition of the defendant currency. SI 5 asks about the circumstances in which claimants acquired their alleged ownership interest, including when, where, why, and from whom the funds were acquired, as well as how they were delivered. SI 7 asks – if claimants received any portion of the defendant currency by check – for information such as the payor, payee, amount of the check(s), and approximate dates the check(s) was/were written and cashed or deposited. It further requests that if any portion of the defendant currency was received a form other than cash or check, that the form, amount, and reason for such payment be disclosed. The parts of SI 9 not already answered ask whether any portion of the defendant currency was received by the other two claimants in this action, and if so, why and

7

how much, as well as why claimants were allowed to drive the Mazda Tribute in which the currency was found on specific dates.

Except as to the inquiry regarding why claimants were allowed to drive the Mazda Tribute, the court finds these interrogatories are proper and directs claimants to answer. These questions all relate to claimants' relationship to the defendant property, in that they seek to elucidate the nature of claimants' alleged ownership interest. Therefore such questions bear on claimants' standing. Cf. United States v. $134,750 U.S. Currency, RWT 09CV1513, 2010 WL 1741359, at *3 (D. Md. Apr. 28, 2010)(claimant required to provide detail in his claim as to how he obtained possession of currency, including, persons received from, date and place received, and a description of the transaction generating the currency). Insofar as SI 9 inquires as to claimants' permission to drive the Mazda Tribute, however, it requests information that is neither related to claimants' identity, nor their relationship to the defendant property. Such a question asks about claimants relationship to an item of property other than the defendant currency, namely, the Mazda Tribute. Accordingly that portion of SI 9 is beyond the scope of Rule G(6) and need not be answered.

SIs 6, 8, and 12 request information to support claimants' claim to the defendant currency. SI 6 requests that claimants identify documents relevant to their interest in the defendant currency and provide the contact information of the document's custodian, or in the alternative produce copies of such documents. SI 8 requests contact information for persons who have knowledge of claimants' ownership of the defendant currency, and SI 12 requests claimants provide their employment history for the last five years as well as identify – or alternatively – produce, tax information for the years when they accumulated the defendant currency. These interrogatories also relate to claimants' relationship to the defendant property, seeking information that may support their ownership claim.

8

See $14,800.00 In U.S. Currency, 2012 WL 4521371 at *2-3 (noting the court had compelled an answer to an interrogatory inquiring as to claimants' employment history and tax information). Given that claimants have stated th funds are profits from lawful business enterprises, requests as to records of employment history and tax information would support such a claim. Accordingly these interrogatories are properly within the scope of Rule G(6) and claimants are directed to answer them.[4]

SIs 10 and 11 have to do with other parties who may have an interest in any portion of the currency and why claimants were in possession of such portion. SI 10 asks for the name of any such third party, and the amount of the defendant currency owned thereby. SI 11 asks why claimants were in possession of such portion, and when claimants took possession thereof. Again, such questions seek to determine claimants' relationship to the property and are thus proper under Rule G(6). Claimants are directed to answer these interrogatories.

SI 13 inquires as to why the defendant currency was placed in the vehicle in the bags it was in, who placed it there, and how long it had been there. None of this information bears either on claimants' identity or on their relationship with the defendant currency. Instead, it asks about claimants' reasons for their use of the currency. Cf. $133,420.00 in U.S. Currency, 672 F.3d 629, 643 n.5 (special interrogatory asking claimant to explain "why anyone would travel anywhere with more than $133,420 in U.S. currency in a rented vehicle" outside to scope of Rule G(6)). Accordingly claimants need not answer this interrogatory.

---

[4] Where these interrogatories provide that in lieu of identifying documents and their custodians, claimants may produce such documents, claimants object to these interrogatories as outside of the scope of Rule G(6), asserting they are requests for production. See $133,420.00 in U.S. Currency, 672 F.3d 629, 643 n.5 (requests for production not allowed by Rule G(6)). The governments requests are properly viewed as interrogatories where they request identification of documents, and an option for production is given as an alternative.

9

SI 14 asks claimants to identify persons who paid them to deliver the defendant currency, including the person claimant Garcia-Ancelmo referred to as his "boss", as well as to summarize the nature of claimants' employment. Standing alone, such a question does not appear to bear on claimants' identity or relationship to the currency. However, when considering the government's theory that claimant Garcia-Ancelmo was paid to deliver the money by parties unknown, and took directions from an unknown "boss", such a question has to do with claimants' asserted ownership interest, and therefore bears on their relationship to the defendant currency and must be answered.

SI 15 requests that claimants disclose any previous involvement with currency seizures and the details of any such seizures. This information bears neither on the identity of the claimants, nor on their relationship to the defendant property. As claimants argue, it is an inquiry about other properties. Accordingly, the court finds this information falls outside the scope of Rule G(6). The court is aware that at other courts have allowed such an inquiry as a special interrogatory, see United States v. Funds in Amount of $174,000.00, 2012 WL 473146 at *1-2 (N.D. Ill. Feb. 6, 2012); United States v. Approximately $750,000.00 in United States Currency, 2011 WL 6155687 at *1-2 (S.D.N.Y. Dec. 8, 2011). The court does not, however, find these cases persuasive where the court has not found any reasoning in such cases, nor argument here, demonstrating how such an inquiry falls within the scope of Rule G(6).

Accordingly the court will deny the government's motion to compel with respect to SI 13, 15, and that portion of SI 9 relating to the use of the Mazda Tribute, and grant the motion to compel in remaining part.

C.  Motion to Stay

Where the court has found that claimants have not fully and properly responded to the government's SIs, the government's motion for a stay of its time to respond to claimant's motion to dismiss until twenty-one (21) days after service of claimants' complete responses – as compelled by this order – will be granted.

## CONCLUSION

Based upon the foregoing, the court GRANTS in part and DENIES in part the government's motion to compel, granting the motion except to that part which requests this court to compel answers to special interrogatories 13, 15, and that portion of special interrogatory 9 dealing with the Mazda Tribute. Claimants shall respond to the government's interrogatories as directed herein within ten (10) days of entry of this order. The court also GRANTS the government's motion to stay its obligation to respond to claimants' motion to dismiss until twenty-one (21) days after claimants have served responses according to this order.

SO ORDERED, this the 13th day of August, 2013.

LOUISE W. FLANAGAN
United States District Judge

11