IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:12-CV-136-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| $307,970.00, IN U.S. CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on claimants' motion to dismiss the case for due process violations, or, in the alternative, for discovery sanctions. (DE 130). Also pending before the court is the government's motion to stay proceedings, made pursuant to 18 U.S.C. § 981(g). (DE 126). The issues raised have been briefed fully and are ripe for ruling. For the reasons that follow, claimants' motion is denied, the government's motion is granted, and the case is stayed on the terms outlined below.

**BACKGROUND**

This case has a lengthy and contentious history that is summarized more fully in the court's prior orders. The court herein summarizes only the facts pertinent to disposition of the instant motion. The government seized the defendant funds from claimant Apolinar Garcia-Ancelmo ("Garcia-Ancelmo") on February 16, 2012, in Wayne County, North Carolina. On July 12, 2012, the government initiated this civil asset forfeiture action in rem against the defendant funds pursuant to 18 U.S.C. § 981 and 21 U.S.C. § 881(a)(6). The government contends the defendant funds were

used or intended to be used in facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 et seq.

Claimants are Garcia-Ancelmo, his wife, Cirilia Garcia ("Garcia"), and their daughter Lucia Covarrubias ("Covarrubias"). Claimants Garcia and Covarrubias filed claims of ownership with the court on August 20, 2012. Claimant Garcia-Ancelmo filed a claim of ownership on August 29, 2012. Throughout this case, claimants have contended that the defendant funds were lawfully obtained through their legitimate business operations.

For various reasons, discovery has not been completed. On November 29, 2012, the court entered its first case management order ("CMO") and discovery began. On January 28, 2013, claimants filed a motion to dismiss pursuant to Rule G(8)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") and Federal Rule of Civil Procedure 12(b)(6). On February 11, 2013, the government served on claimants special interrogatories, inquiring as to their "identity and relationship to the defendant property," pursuant to Supplemental Rule G(6). By operation of law, the government's response time automatically was stayed until 21 days after claimants responded to the special interrogatories, giving the government until as late as March 28, 2013, to respond to the motion to dismiss. See Supplemental Rule G(6)(c).

On March 5, 2013, claimants filed a motion to stay the case. Claimants sought a stay of both discovery and their obligation to respond to the government's special interrogatories, until resolution of their motion to dismiss as well as the government's also-pending motion to amend its complaint. On May 22, 2013, the court granted in part and denied in part claimants' motion to stay. The court granted the motion to stay discovery generally until it resolved the parties' motions. However, the

2

court denied claimants' motion inasmuch as they sought a stay of their response to the government's special interrogatories. The court directed claimants to respond to those special interrogatories within 10 days of its order.

On June 14, 2013, after claimants responded to the government's special interrogatories, but before the government filed its memorandum in opposition to claimants' motion to dismiss, the government filed a motion to compel responses to those same special interrogatories, as well as a motion to stay its response time to claimants' motion to dismiss. Therein, the government argued that claimants had provided materially incomplete responses, or otherwise had altogether failed to respond, to a number of the interrogatories. Briefing on the government's motion to compel ensued. On August 13, 2013, the court entered order granting in part and denying in part the government's motion to compel and granting the government's motion to stay its response time. Specifically, the court directed claimants to answer certain interrogatories within 10 days of the order and granted the government an additional 21 days after claimants' response to file any responsive brief.

Rather than respond to claimants' motion to dismiss, on September 13, 2013, the government instead filed a motion to strike the three claims of ownership filed by claimants, as well as a motion for default judgment, the filing of which was grounded in the theory that no claimant had come forward to assert ownership of the defendant funds. In addition, the government filed a motion to continue the stay of its response time to claimants' motion to dismiss, filed some eight months earlier. On September 17, 2013, the court noticed a hearing on the government's various motions. On September 23, 2013, claimants filed a motion to continue that hearing. On September 27, 2013, the court entered a text order denying the government's motion to strike and also denying the government's motion for default judgment. In addition, the court denied claimants' motion to

dismiss without benefit of government response, as allowed by Supplemental Rule G(6)(c), and further denied as moot the government's motion to continue its response deadline. The court then directed the parties to submit to it within 14 days a second discovery plan to govern the conduct of pretrial activities.

The parties filed a joint report, pursuant to Federal Rule of Civil Procedure 26(f), on October 10, 2013. On October 15, 2013, the court entered a second CMO, which provided that discovery was to close by April 15, 2014. However, three months into the renewed discovery period, on January 23, 2014, the government filed its first motion to stay the case pursuant to 18 U.S.C. § 981(g). Briefing on the government's motion lasted an extended amount of time, with both parties seeking an extension of time in which to file their respective response and reply, and with claimants filing a disfavored sur-reply without leave of court. Claimants' sur-reply drew a motion to strike from the government, which then had to be fully briefed. In all, briefing on the government's motion to stay was not completed until April 9, 2014. Finally, on May 23, 2014, the court granted the government's motion and stayed the case up to and including July 23, 2014.

The government filed a motion to continue the effect of the stay on July 23, 2014, the day the stay expired. As a result, the case fell into limbo, a sort of quasi-stay, until briefing on the issue was completed. On August 13, 2014, claimants filed a memorandum in opposition to the government's requested stay. In that same document, and in disregard of the Local Civil Rules, claimants embedded a motion, styled as a "request," to dismiss the case for due process violations. On August 18, 2014, the court entered order granting the government's motion to stay; however, the court tailored the granted stay with an eye toward claimants' due process concerns, limiting its reach to only two months.

4

At the expiration of the stay period, on October 17, 2014, the parties' filed a joint motion to extend the time to complete discovery and for modification of the second CMO. That joint filing was withdrawn on the same day. On October 24, 2014, the court entered order directing the parties to file a proposed schedule for proceeding with any additional discovery. On November 5, 2014, the parties responded with a second joint motion to amend the second CMO. Therein, the parties requested a new discovery deadline of February 28, 2015, with dispositive motions due by March 31, 2015. The court granted the parties' joint motion on November 7, 2014, and the new case schedule took effect.

On January 30, 2015, one month prior to the close of the discovery period, claimants filed a motion for summary judgment, which argued that the government lacked probable cause to bring this case, as well as that the government could not meet its trial burden. Approximately three weeks later, on February 18, 2015, and 10 days before the close of discovery, claimants filed a motion to stay the proceeding, with the proposed stay to last until the court ruled on their motion for summary judgment. On February 20, 2015, the government also filed a motion to stay the case pursuant to 18 U.S.C. § 981(g). By order entered July 2, 2015, the court granted in part claimants' motion to stay and denied as moot the government's requested motion. In particular, the court bifurcated the issues raised in claimants' motion for summary judgment and stayed the proceedings until resolution of the probable cause issue. The court deferred ruling on the merits issue until the government had the opportunity to complete discovery.

The court denied claimants' motion on the probable cause issue on August 26, 2015. In its order, the court set the final discovery deadline for October 20, 2015, with all dispositive motions due by November 20, 2015. On October 13, 2015, claimants filed a motion for a protective order.

5

Claimants represented to the court that the government sought to depose them in connection with this case, and moved the court for an order limiting the use of their deposition testimony in unrelated proceedings. After claimants filed their motion, the parties jointly moved to extend the discovery deadline until 15 days after the court resolved claimants' motion.

On October 27, 2015, the government filed the instant, third motion to stay proceedings pursuant to 18 U.S.C. § 981(g). Thereafter, on November 10, 2015, claimants filed the instant motion to dismiss or in the alternative for discovery sanctions. In their motion, claimants contend that the government has violated their due process rights by unfairly preventing them from litigating their claim on the merits. In addition, claimants contend that the government committed certain unfair discovery practices in connection with the first issue raised by their motion for summary judgment, and, as a result, they are entitled to either a dismissal of this matter with prejudice, or, at the very least, to have certain items of evidence excluded from an eventual trial on the merits.

## COURT'S DISCUSSION

A.     Motion to Dismiss

Approximately four years have passed since the defendant funds were seized. The central argument before the court is whether that delay is unconstitutional. Claimants contend that the government has violated their due process rights by "failing to bring the case to trial within a reasonable amount of time," thereby depriving them "of their hard and legitimately earned property." (Claimants' Br., DE 130-1, 9). In support of the theory that a prolonged forfeiture proceeding can contravene due process, claimants cite <u>United States v. Eight Thousand Eight Hundred and Fifty Dollars</u>, 461 U.S. 555, 564–65 (1983) ("<u>$8,850.00</u>"), and <u>United States v. Banco Cafetero Panama</u>, 797 F.2d 1154, 1163 (2d Cir. 1986) ("<u>Banco Panama</u>"). In opposition, the

government suggests that the reasoning of $8,850.00 does not apply in this case, and that, in any event, its conduct has caused no unconstitutional delay. The court agrees with claimants that $8,850.00 establishes the proper analytical framework. However, the court agrees with the government inasmuch as it contends that, upon application of that analytical framework to the facts of this case, no due process violation has occurred. Accordingly, claimants' motion is denied.

In $8,850.00, the Supreme Court held that failure to file a forfeiture suit within a reasonable time after seizure violates a claimant's due process right to be heard "at a meaningful time." See 461 U.S. at 562–65. The Court observed that the specific due process concern spurred by inaction in a forfeiture case "mirrors the concern of undue delay encompassed in the right to a speedy trial." Id. at 564. Thus, courts analyzing the impact of delay on the claimant's due process rights in a civil asset forfeiture case balance the same factors used when determining whether a given delay violates a criminal defendant's Sixth Amendment right to a speedy trial. $8,850.00, 461 U.S. at 565–66. See generally Barker v. Wingo, 407 U.S. 514 (1972).

Although $8,850.00 addresses only the "narrow" issue of delay between seizure and filing, the "flexible" due process principles articulated by the Court easily are expanded to cover situations in which the government unfairly delays a case from coming to trial. 461 U.S. at 562, 565. Requiring the government to file timely a forfeiture complaint does not guarantee that the claimant will be heard at a meaningful time. To the contrary, if the most due process required was the filing of a complaint, after the government fulfilled that task, its attorneys could sit idly by without ever taking meaningful steps to move the case forward. No one would argue that the due process rights of the accused criminal defendant are satisfied merely by initiating a criminal action. See, e.g., United States v. Eccleston, 615 F. App'x 767, 775 (4th Cir. 2015) (addressing both delay between

arrest and indictment and arrest and final disposition of criminal matter). Rather, just as the criminal defendant is entitled to a final adjudication, so too is a forfeiture claimant. See, e.g., Banco Panama, 797 F.2d at 1163 (applying the Barker test to "the holding of the forfeiture trial as well as to the filing of the action"); United States v. $59,074.00 in U.S. Currency, 959 F. Supp. 243, 250–51 (D.N.J. 1997) (holding Barker test applied where 30 months had passed since seizure and the government continued to file deficient pleadings) ; see also United States v. Premises Located at Route 13, Kilburn Beach, Florence, Ala., 946 F.2d 749, 754–55 (11th Cir. 1991) (holding Barker test applied where 11 months had passed since seizure and claimants were given no adversarial probable cause hearing).

To determine whether delay in the litigation process violates the forfeiture claimants' due process rights courts balance 1) the length of delay, 2) the government's proffered justification for the delay, 3) the timeliness of the claimant's assertion of his or her rights, and 4) prejudice to the claimant. See Barker, 407 U.S. at 530–32. Balancing these factors necessarily is an ad hoc process, and no factor is determinative. See $8,850.00, 461 U.S. at 564. In fact, these four enumerated factors are non-exclusive, and the list may be subject to addition or subtraction based on the facts of the case. See Barker, 407 U.S. at 530. In any event, to trigger analysis of the second, third, fourth, or any additional, identifiable factors, there must be "some delay which is presumptively prejudicial." Id. Thus, the first factor acts as both a threshold requirement, as well as a consideration in the ultimate balancing analysis. See United States v. Hall, 551 F.3d 257, 271 (4th Cir. 2009).

The first factor is the length of delay. There are two components to the first Barker factor. Id. "First of all, a reviewing court must decide whether the length of the delay triggers a speedy trial

inquiry." <u>Id.</u> "Second, a reviewing court must weigh 'the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.'" <u>Id.</u> (quoting <u>Doggett v. United States</u>, 505 U.S. 647, 652 (1992)). Almost four years have passed since the initial seizure, and this case has been pending for approximately three and one half years. The court assumes this delay to be presumptively prejudicial such that it "triggers a speedy trial inquiry." In addition, despite the adversarial nature of this proceeding, as compared to the one-sided situation presented in <u>$8,850.00</u> and other similar cases, four years is a substantial amount of time. Thus, the court assumes that the first of the <u>Barker</u> factors is satisfied and moves on to the remaining three.

The second factor is the "reason the government assigns to justify the delay." <u>Barker</u>, 407 U.S. at 531. This factor is "[c]losely related" to the first, and different weights should be given to different justifications. <u>Id.</u> For example, "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," while "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government." <u>Id.</u> However, "[a] valid reason, such as a missing witness, should serve to justify appropriate delay." <u>Id.</u>

The government points to claimants' own litigation tactics as a notable source of the delay in this case, and the court agrees. Through two motions to stay, as well as several improper filings, claimants have extended the case schedule. For example, claimants filed a motion to stay the case on March 8, 2013. That motion to stay subsequently was granted and delayed the case for approximately six months, until the stay was lifted in September 2013. More recently, claimants moved to stay the case in conjunction with their motion for summary judgment. That stay was

9

granted on July 2, 2015, and had the effect of delaying the case in excess of six months, from February 18, 2015, until August 26, 2015. Almost one of the four years this case has been pending is attributable to claimants' defense. Although claimants should not be penalized for mounting a vigorous defense, nor should they gain a windfall by prolonging the case only to have it dismissed as a result of that delay.

That is not to say, however, that the government has not engaged in its fair share of procedural motions, which also have slowed the progress of the case. For example, the government moved to stay the case on January 23, 2014, pursuant to 18 U.S.C. § 981(g). Although the resulting stay was brief, only two months, once renewed, the effects of the stay were more substantial. All told, the government successfully stayed the case for approximately 10 months, from January 23 until October 17, 2014. Nevertheless, the court does not weigh that delay harshly against the government. The court is mindful of the tension between criminal investigation and a forfeiture proceeding and views the delay as a necessary and permissible attempt to accommodate the criminal matter. See $8,850.00, 461 U.S. at 567. In addition, the Civil Asset Forfeiture Reform Act grants the government the statutory right to make a § 981(g) motion whenever it believes that "civil discovery will adversely affect [its] ability . . . to conduct a related criminal investigation." 18 U.S.C. § 981(g)(1). As the court's grant of the government's January 23, 2014, motion demonstrates, the delay was the result of the government satisfying those statutory criteria.

Although the court now considers the government's delay favorably, it does not necessarily follow that further, more extensive delays will comport with due process. Certainly some delay is to be anticipated during the pendency of a criminal investigation or criminal prosecution; well-founded criminal cases, and especially cases involving drug conspiracies, do not materialize over

10

night.  However, as the Supreme Court warned in <u>Barker</u>, eventually the government must bear the burden of delay, even where that delay is unavoidable or the result of well-intentioned actions.  <u>See</u> 407 U.S. at 531 (discussing "neutral reason[s]" for delay).  The court cannot, and does not attempt to accurately predict the tipping point. Context is key.  Any given term of future delay, for instance, necessarily must be viewed in light of the status of the criminal investigation, as well as the pendency of any criminal prosecution.

In any case, other delays also have been attributable to either the court's scheduling or to both parties.  Frequently the court has given the parties multiple weeks to respond to orders or pose a new case schedule, which, it bears mentioning, have been taken advantage of fully.  The discovery period, unimpeded by motions to dismiss or motions to stay, has lasted 10 months.  In the abstract, 10 months is not an altogether unreasonable time in which to complete discovery.  That figure is made all the more reasonable considering that, in this case, discovery has been taken only in fits. In addition, the parties have at least once jointly agreed to extend the discovery schedule.  Thus, considering the reasons for and sources of delay in this case the court cannot conclude that the length of this case is unreasonable.

The court's analysis, which discounts heavily any delay occasioned by claimants' actions, finds support in a related, yet very different area of law: the Speedy Trial Act, 18 U.S.C. §§ 3161–3147.  Although not a perfect analogy, <u>see</u> § 3173 ("No provision of this chapter shall be interpreted as a bar to any claim of denial of speedy trial as required by amendment VI of the Constitution."), courts have long recognized that it would be "an unusual case in which the time limits of the Speedy Trial Act have been met but the sixth amendment right to speedy trial has been violated." <u>United States v. Nance</u>, 666 F.2d 353, 360 (9th Cir. 1982); <u>accord</u> <u>United States v. Schlei</u>,

122 F.3d 944, 986 (11th Cir. 1997); United States v. DeJesus, 887 F.2d 114, 116 n.1 (6th Cir. 1989); United States v. Mitchell, 723 F.2d 1040, 1049 (1st Cir. 1983). Without implying that the time limit imposed by the Speedy Trial Act applies in civil asset forfeiture cases, the court finds it instructive that the provisions of the statute are tolled during the period of "delay resulting from any pretrial motion." 18 U.S.C. § 3161(h)(1)(D). Thus, here, where at least one year of delay has occurred as a result of claimants' various motions to stay, the court will not hold that time against the government.

Claimants nonetheless vigorously assert the second Barker factor weighs in their favor. In their view, the source of the "exorbitant delay" in bringing this matter to trial is the government's "opportunistic gamesmanship, which is . . . easily demonstrated [where] the government has revealed that it has repeatedly withholding [sic] relevant evidence from [c]laimants." (Claimants' Br., DE 130-1, 13). Aside from the alleged discovery violations, addressed below, claimants' argument essentially boils down to this: allegations that the government has unfairly used civil discovery to its advantage in order to gain an edge in its criminal investigation. The court disagrees with claimants' unsupported characterization of the government's conduct. Because there is no indictment in this case, the government already possesses the power to gather much of the same information in the course of a grand jury proceeding. See, e.g., United States v. Doe, 465 U.S. 605, 610–14 (1984) (contents of documents not protected by Fifth Amendment privilege against self incrimination, while production of documents by the accused may be testimonial and, thus, protected by the Fifth Amendment); see also David B. Smith, Prosecution and Defense of Forfeiture Cases § 10.02[1] (noting prosecutors may rely on the grand jury as a "powerful engine" of criminal discovery, which then may be shared with the government's asset forfeiture attorney). Moreover,

the government has not used civil discovery to circumvent or otherwise compromise claimants' Fifth Amendment rights. Those rights have been accommodated throughout this proceeding, where they had not been deposed at the time the court extended the time to complete discovery, subsequently were granted a protective order limiting the use of their deposition testimony consistent with the Fifth Amendment, and were not deposed during the pendency of their motion for protective order.

Turning to the third <u>Barker</u> factor, assertion of the right to a speedy trial, the court finds this factor neutral. Although claimants correctly point out that they have been involved in this case at every stage, timely filing their claims and participating in the discovery process, their efforts to advance a speedy resolution cannot be viewed in a vacuum. <u>See</u> <u>Barker</u>, 407 U.S. at 531–32. In particular, the court is mindful of the claimants' previously-mentioned efforts to stay the case. Although they certainly were and are well-intentioned and well-founded, dismissing the case when the delay at issue partially is attributable to claimants would be to grant them a windfall.

Finally, the fourth <u>Barker</u> factor, prejudice to the claimant, weighs neither for nor against dismissing the case. The <u>Barker</u> court identified three considerations pertinent to a court's analysis of the third factor: 1) prevention of oppressive pretrial incarceration, 2) minimization of anxiety and concern of the accused, and 3) limiting the possibility that the defense will be impaired. 407 U.S. at 532. Of those three considerations, the third is the most important. <u>Id.</u> Even assuming the first defense interest weights in claimants' favor, the second, and the critical third defense interest do not.

On the second defense interest, anxiety and concern, claimants have failed to identify "any restraint on liberty, disruption of employment, strain on financial resources, [or] exposure to public obloquy that [i]s greater than that faced by anyone openly subject to criminal investigation." <u>Hall</u>, 551 F.3d at 272 (internal quotations and citations omitted) (first alteration in original). Claimants

obviously have lost substantial financial resources. However, any criminal investigation into the source of allegedly ill-gotten funds decreases either the target's ability to jettison those funds, or, at a minimum, the desirability and wisdom of parting ways with those funds.

That leaves the third defense interest, the possibility of impairing the defense, as claimants' lone basis on which to rest their argument. In their own words

> [c]laimants earned the money in their legitimate business of providing migrant labor to local farming operations. Inherently, this means witnesses will move to different cities, states, and countries. People change their number. People's memories fade. Every day that goes by, and every employee or client that becomes out of touch or otherwise unavailable, harms [c]laimants' ability to defend this case.

(Claimants' Br., 12–13). The court is not persuaded by claimants' contentions. As an initial matter, those same considerations could harm the government's case as well, which would be a boon to claimants. In any event, although those farmers' memories of the particulars of claimants' staffing services may wane, claimants readily admit they previously have enlisted the services of an accountant. Any information in their accountants' possession should prove more than sufficient to bolster claimants' case. Moreover, claimants' contentions are purely speculative. The court is unpersuaded by claimants' veritable parade of horribles where there is no concrete evidence supporting it. Without evidence of how the delay actually has prejudiced their defense, the court must conclude that no such prejudice exists. Hall, 551 F.3d at 273; United States v. Ninety-Three (93) Firearms, 330 F.3d 414, 426 (6th Cir. 2003).

In sum, claimants have failed to demonstrate that this case should be dismissed on the basis of $8,850.00 for due process violations. Even assuming that there has been a prejudicial delay, the various reasons for that delay are substantial. A portion of the delay is attributable to the government's own legitimate criminal investigation, and another contributing factor is the

sometimes slow-progress of civil litigation. The court also views claimants' own contribution to the delay as a significant factor warranting the denial of their motion. Moreover, the remaining Barker factors also weigh against claimants. Although claimants have expressed an interest in a speedy resolution, they have contributed materially in preventing any final outcome. Although it undeniably is their right to do so, the court will not countenance claimants' argument that they should be allowed to both contribute to the overall delay in litigation and yet reap the benefit of that delay. Finally, claimants have failed to provide any concrete evidence demonstrating the negative effects of delay on their defense. Weighing all these reasons together, claimants' motion must be, and is, denied.

B.     Motion for Discovery Sanctions

Next, the court considers the consequences of the government's discovery conduct. Claimants move the court to either dismiss the case outright, or at least severely limit the universe of evidence available to the government, as a result of alleged discovery violations. The precise nature of claimants' motion requires a brief historical discussion. In support of its motion to stay the proceeding, filed January 23, 2014, the government submitted the ex parte declaration of Drug Enforcement Agency ("DEA") Task Force Officer Lance Anthony under seal. That declaration, which subsequently was unsealed in conjunction with the government's defense of claimants' motion for summary judgment, detailed a larger investigation into claimants, specifically claimant Garcia-Ancelmo, than claimants previously had understood. In particular, the Anthony declaration detailed claimant Garcia-Ancelmo's interactions with a third party, Sanchez-Correa, and discussed recorded phone conversations between the two, wherein Garcia-Ancelmo and Sanchez-Correa conversed about various drug transactions. Claimants find troubling that the government failed to

15

produce the Anthony Declaration, which was prepared on January 23, 2014, as well as the recordings mentioned therein, in its November 26, 2014, response to claimants' request for production of "[a]ll documents, reports, statements, recordings, photographs, or any other information or evidence . . . which in any way relate to any investigation by law enforcement officers of [c]laimants." (See DE 116-1, 3).

The Anthony declaration was unsealed on the government's motion on July 15, 2015, so that it could be used in defense of claimants' motion for summary judgment on the issue of probable cause existing at the time the government filed suit. Since the unsealing of that declaration, on September 3, 2015, the government provided claimants with the various recordings mentioned in the Anthony declaration. Thereafter, on October 27, 2015, the government again served claimants with supplemental discovery responses. At that time, the government served on claimants a redacted copy of a DEA Task Force Officer's report from an August 14, 2015, interview with a confidential informant. This report was prepared on August 15, 2015, and was approved on September 1, 2015, but was not served with the government's September 3, 2015, supplementations.

In their motion, claimants mount an attack on three specific alleged discovery violations. First, claimants contend that the recorded phone calls should have been turned over to them in the government's first, November 26, 2014, response to their request for production. Next, claimants suggest that the Anthony declaration also should have been disclosed in the government's November 26, 2014, discovery response. Finally, claimants argue that the DEA report, dated August 15, 2015, should have been disclosed in the government's discovery supplementation served September 3, 2015. Citing these alleged discovery violations, claimants move the court to sanction the government's discovery tactics. Claimants suggest the appropriate sanction in this context is

outright dismissal; however, claimants also contend that, should the court determine a lesser sanction is appropriate, that the court should exclude from trial any evidence of the recorded phone conversations, including the conversations themselves, as well as witness testimony about the contents of those conversations, and also should exclude evidence of the August 15, 2015, DEA report.

Before diving into the merits' of claimants' motion, the court pauses briefly to discuss counsel's filing habits. At docket entry 138, claimants filed an omnibus reply brief, containing arguments in support of both their motion to dismiss and motion for discovery sanctions. Inasmuch as claimants made arguments in support of their motion to dismiss, the filing is proper and in compliance with the Local Rules. However, a not-insubstantial portion of claimants' reply addresses the discovery issue. Pursuant to Local Civil Rule 7.1(c), "any motion . . . that seeks to enforce, use, regulate, extend, modify, nullify, or limit any of the procedures in any of Rules 26 through 37 of the Federal Rules of Civil Procedure" is a "discovery motion." Local Civ. R. 7.1(c)(1). Further, pursuant to Local Civil Rule 7.1(f)(2) "[r]eplies are not permitted in discovery disputes." Id. 7.1(f)(2). Thus, to the extent claimants' motion seeks a discovery sanction it is a "discovery motion" and the reply is improper.

The court writes separately on this issue because it is not the first time that claimants' counsel has disregarded the Local Civil Rules. For example, on March 24, 2014, claimants filed a sur-reply without leave of court. In addition, on August 13, 2014, claimants filed a "request" for dismissal embedded within a memorandum in opposition to the government's motion for continued stay of the case. Both of these actions disregarded the Local Civil Rules. Under the Local Rules, replies in non-discovery motions are disfavored; sur-replies without leave of court are omitted

17

entirely. <u>See</u> Local Civ. R. 7.1(f)(1). Motions, such as claimants' "request" for dismissal are to be separately filed and accompanied by a memorandum in support, not embedded within responses. <u>See</u> <u>id.</u> 7.1(d). The goals of Federal Rule of Civil Procedure 1 would be best served if both parties ensure familiarity with the rules of practice before this court.

Turning to claimants' motion, it must be denied. The court's denial rests on both procedural and substantive grounds. Local Civil Rule 7.1(c) specifically provides that "[n]o discovery motion will be considered by the court unless the motion sets forth or has attached thereto, by item, the specific question, interrogatory, etc., with respect to which the motion is filed." Local Civ. R. 7.1(c)(2). Claimants failed to attach to the motion any incomplete, or allegedly evasive discovery responses. Rather, claimants only recite generally their myriad grievances with the government's discovery tactics. However, the plain language of the rule requires an itemized list of challenged discovery responses. Accordingly, the motion is not entitled to consideration and should be denied.

In any event, the court finds claimants' motion without merit. Rule 37 of the Federal Rules of Civil Procedure governs discovery sanctions. As relevant here, the rule provides that

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). In addition to exclusion, the court also may impose numerous other sanctions, <u>see</u> <u>id.</u> 37(c)(1)(C), including dismissal. <u>Id.</u> 37(b)(2)(A)(v). The Fourth Circuit has observed that, where the failure was not either substantially justified or harmless, Rule 37 operates as an "automatic sanction." <u>S. States Rack & Fixture, Inc. v. Sherwin-Williams, Co.</u>, 318 F.3d 592, 595 n.2 (4th Cir. 2003) (quoting Fed. R. Civ. P. 37 advisory committee notes (1993)).

18

Claimants' proposed relief would punish the government's alleged failure to supplement. Supplementation of discovery is governed by Rule 26(e), which, in pertinent part, states

> A party who has made a disclosure under Rule 26(a)–or who has responded to an interrogatory, request for production, or request for admission–must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Fed. R. Civ. P. 26(e). Read together, Rules 26(e) and 37(c) provide that where a party makes a false or misleading disclosure and fails to correct that disclosure, or where that party otherwise fails to supplement a truthful disclosure with newly-obtained, relevant information, that party is subject to Rule 37's automatic sanction, unless the disclosure is substantially justified or harmless. See Fed. R. Civ. P. 26(e) & 37(c)(1); see also, e.g., Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1008 (8th Cir. 1998) (failure to timely disclose is failure to disclose). With these principles in mind, the court turns to each objected-to discovery practice more specifically, and rejects claimants' contentions in turn.

Claimants first contend that the court should sanction the government's failure to disclose the recorded phone conversations by excluding the calls, as well as any testimony about their content. As a threshold matter, the court must consider whether the government violated Rule 26(e). Failure to respond fully to a request for production in a timely manner is a violation of the rule. See Wilkins v. Montgomery, 751 F.3d 214, 221 (4th Cir. 2014). The government does not suggest that it responded appropriately to claimants' request for production, and the court agrees. Request number two specifically requested the production of "[a]ll documents, reports, statements, recordings, photographs, or other information or evidence . . . which in any way relate[s] to any investigation by law enforcement officers of [c]laimants." (DE 116-1, 3). The phone recordings plainly related to a law enforcement investigation into claimant Garcia-Ancelmo, yet the

19

government, without objection, failed to mention any such evidence. The government's failure to do so is a complete abdication of its duty to respond.

In opposition, the government argues that its failure was not intentional, but, rather, was an attempt to fashion a more convenient means of discovery. Specifically, the government contends that, in response to claimants' request for production, it began to collect the requested information, so as to not respond in a piecemeal fashion. However, the government argues, before it could respond, claimant Garcia-Ancelmo was arrested, which opened a new investigation, prompted it to file a motion to stay, and resulted in the relevant information being turned over only on September 3, 2015. The government's cavalier attitude toward its discovery obligations is exceptionable. It cites no authority to suggest that the most convenient means by which a litigant may respond to a request for production is the appropriate method of response. Nor does it attempt to explain why its response failed to even hint at the existence of plainly responsive information. Thus, the court has no issue concluding that the government's failure to produce the recorded phone conversations was a violation of its discovery responsibilities.

Having reached that conclusion, the court next must consider whether the conduct is sanctionable, that is, whether it was prejudicial, as opposed to "substantially justified or harmless." Fed. R. Civ. P. 37(c). To determine whether a discovery violation is substantially justified or harmless the court balances five factors. See Sherwin-Williams, 318 F.3d at 597. They are: 1) the surprise to the party against whom the evidence would be offered; 2) the ability of that party to cure the surprise; 3) the extent to which allowing the evidence would disrupt the proceedings; 4) the importance of the evidence; and 5) the nondisclosing party's explanation for its failure to disclose the evidence. Id. On balance, the court holds that these factors favor denying claimants' motion.

As to the first factor, the court finds that claimants were surprised by the evidence. According to the Anthony declaration, the recorded phone calls paint a picture of claimant Garcia-Ancelmo as a sophisticated drug lord, a description that goes far beyond that which is conveyed in the government's originally produced documents. As to the second factor, the court finds that claimants were able to cure any surprise. The phone calls were disclosed on September 3, 2015, while discovery was ongoing. The parties have mutually agreed to extend discovery even farther into the future. In the period since claimants have received the recordings there has been ample time to consider their contents and plan further discovery. As to the third factor, the court finds that use of this discovery would not disrupt the proceeding. Although claimants currently have pending a motion for summary judgment, the time for filing such motions is far from over. There is no impediment precluding claimants from withdrawing their currently pending motion and refiling one that accounts for the newly received information. As to the fourth factor, the court finds that the evidence is important, where, in the government's view, it tends to connect claimant Garcia-Ancelmo to the drug trade. As to the fifth factor, although the government's explanation is unavailing, the court finds the government acted in conformity with its explanation and, thus, that it was an unjustifiable lapse in judgment.

Nevertheless, claimants argue that the second factor, the ability to cure the harm, weights heavily in their favor. Specifically, claimants contend that the government "opposes reopening discovery," and support that contention by pointing toward the government's recently-filed motion to stay the case, discussed below. (Claimants' Br., 20). That false equivalency does not sway the court's conclusion. Section 981(g) gives the government the right to move for a stay where it feels that further discovery will hamper its criminal investigation. 18 U.S.C. § 981(g). It does not follow

that the government wishes to avoid all further discovery. Moreover, although claimants argue that the government's late disclosures will force them to alter their theory of the case, this is a normal side effect of discovery and will burden claimants no more than any other litigant in any other case. On balance, these factors do not favor imposition of any sanction for the government's failure to appropriately respond to claimants' request for production. Where the failure to disclose occurred at an early stage, claimants have suffered no prejudice. Accordingly, claimants' motion is denied as to the first proposed ground for sanctions.

Claimants next suggest that the government should be sanctioned for failing to disclose the Anthony declaration, which was in existence at the time the government responded to claimants' request for production, but was omitted from the universe of documents produced. Unlike the preceding analysis, the court cannot conclude that the government failed to properly disclose the declaration. Rule 26(e) speaks only of "documents." However, although a declaration is tangible, it is not a "document" within the spirit of the rule. See Intel Corp. v. VIA Techs., Inc., 204 F.R.D. 450, 451 (N.D. Cal. 2001). Rather, a declaration properly is characterized as testimony not subject to production under the rules. Id.; see also Fed. R. Evid. 602 & 603 (before testifying witness must indicate personal knowledge of matter testified to and take an oath, or make an affirmation, to testify truthfully). Moreover, it is not clear that Anthony's testimony was not "otherwise made known" to claimants during the discovery process, where Anthony was identified as someone in possession of knowledge about the case in response to all interrogatories posed by claimants. (See 116-1, 51, 58) (identifying Anthony as a person who provided law enforcement with information about claimant Garcia-Ancelmo). In any event, even if the declaration was subject to discovery the court finds that

the government's failure to disclose was not prejudicial. In so holding, the court rests on its prior analysis.

Claimants also lodge a larger objection to the government's discovery violation related to the Anthony declaration and associated phone recordings. Specifically, they contend that the government already has gained an unfair advantage, where it relied on the Anthony declaration in response to claimants' motion for summary judgment mounting an attack on the government's probable cause to file suit. In defense of claimants' motion, the government relied on the Anthony declaration, which it moved to have unsealed. It is undisputed that prior to the government's response in opposition to claimants' motion the government had not disclosed the Anthony declaration, or its contents, to claimants. As was previously explained, "the government's conduct in post-filing discovery is immaterial to the probable cause determination." United States v. $307,970.00 in U.S. Currency, __ F. Supp. 3d __, 2015 WL 5057311, at *5 (E.D.N.C. 2015). Thus, to the extent claimants rest the instant motion to exclude on discovery violations affecting claimants' earlier, procedural motion for summary judgment, their argument is without merit. See id. at *5 n.6 (noting claimants properly could challenge the government's failure to disclose as it related to the merits of the case).

Claimants finally move to exclude the August 15, 2015, DEA report, provided to them on October 27, 2015, on the basis that it was not timely disclosed. Rule 37(c) only operates to exclude evidence not disclosed in accordance with Rule 26(e). Further, Rule 26(e) requires supplemental disclosures be made "in a timely manner." The report at issue was not disclosed along with the phone recordings on September 3, 2015, despite the fact that it was approved by the author's supervisor on September 1, 2015. However, as the government's counsel explains, the document

23

was not provided to him until September 15, 2015, obviously too late to be included in the September 3, 2015, supplementation. In this case, the court finds no violation of Rule 26(e). Although the government's attorney did not immediately provide claimants' counsel with the challenged report, the rule demands only "timely," not immediate, compliance. The report was provided on October 27, 2015, within a reasonable amount of time after the government received it and within the allowable time period for discovery.[1]

In sum, claimants' motion for discovery sanctions must be denied. Although the government has violated its discovery obligations with respect to the recorded phone calls, it did so at an early stage in this case so as to cause claimants' no harm. Moreover, as to the other grounds asserted in claimants' motion, the government has not violated its discovery obligations. Because the court concludes that the government's conduct is not sanctionable, the court need not address the appropriate sanction.

C.     Motion to Stay

Section 981(g)(1) provides that "[u]pon motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case." 18 U.S.C. § 981(g)(1). Thus, the government must show first that the underlying criminal investigation is "related" to the instant proceeding and then that further civil discovery "will" adversely affect the ongoing investigation in that related case. United States v. Sum of $70,990,605,

---

[1] In so holding, the court observes that the government served the DEA report on October 27, 2015, seven days after discovery was to end. However, the parties jointly filed a motion to extend the discovery deadline on October 13, 2015. Although those circumstances present a close call, where the court did not grant the motion until October 21, 2015, after discovery was to close, the court ultimately does not hold the October 27, 2015, supplementation against the government. The report was served within the agreed-upon, amended discovery period.

4 F. Supp. 3d 209, 212 (D.D.C. 2014). An investigation is "related" where there is "overlap" between "the parties, witnesses, facts, and circumstances involved in the two proceedings." United States v. One 2008 Audi R8 Coupe Quattro, 866 F. Supp. 2d 1180, 1184 (C.D. Cal. 2011); see also § 981(g)(4). There is no requirement that there be "identity with respect to any one or more factors," § 981(g)(4), however where the criminal investigation and forfeiture action "have common facts, similar alleged violations and some common parties, the actions are clearly related." United States v. All Funds on Deposit in Suntrust Account No. XXXXXXXXX8359 in the Name of Gold & Silver Reserve, Inc., 456 F. Supp. 2d 64, 65 (D.D.C. 2006).

On the record before it, the court determines that the government has met its burden. There currently are pending two criminal investigations that are "related" to the instant forfeiture action. First, and most obviously, there is a pending drug investigation that targets the three claimants and has substantial, if not perfect, factual overlap. In addition, there also is a pending investigation into the claimants for harboring illegal immigrants. See generally United States v. $59,807.00 in U.S. Currency, No. 5:15-CV-179-FL (E.D.N.C. Apr. 27, 2015). That case also is "related" to this forfeiture action where it involves identical parties, as well as similar facts and witnesses. Resolution of the harboring investigation may affect this litigation.

In addition, the government has shown that further discovery "will" harm at least one of its investigations. In particular, the government already has responded to a discovery request with incomplete information, where it omitted the name of a confidential informant in a supplemental response. (See DE 128-1, 5–9). Section 981(g) is intended to prevent discovery of this type of incomplete information. Such limited discovery hampers both parties' efforts; it impairs claimants'

ability to mount a forceful and complete defense and further may compromise the government's pending criminal investigation. Accordingly, the court grants the motion and will stay the case.

The only issue remaining is how long this case must remain stayed. The government requests a stay "until [the harboring] investigation . . . is completed or, in the event one or more of the claimants or another target of the investigation is indicted, to the conclusion of the criminal proceeding(s)." (DE 126). Claimants oppose any further stay of this action.

The stay, as requested, is too indefinite. See, e.g., Landis v. N. Am. Co., 299 U.S. 248, 257 (1936) ("The stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible to prevision and description."). This is not a case where the requested stay is to remain in effect until the end of an already-commenced criminal prosecution. See generally, e.g., United States v. Assorted Firearms-Motorcycles & Other Personal Property, 677 F. Supp. 2d 1214 (C.D. Cal. 2009). Rather, here, the status of the criminal investigation is fluid, and no charging decision have been made. Under such circumstances, an indefinite stay might adversely affect claimants' due process rights. **Thus, the court stays this case up to and including July 1, 2016. At the conclusion of that time, the parties will confer and provide the court with a joint status report for moving forward with the case by July 10, 2016. Should the government seek continued stay of this case, any motion to that effect shall be filed no later than May 20, 2016. Claimants will be afforded the opportunity to respond, but no replies shall be allowed.** However, at four and one half years, the court notes that further stay of this case may be disfavored without substantial justification, particularly as to the reason why such extended time period is necessary.

## CONCLUSION

Based on the foregoing, claimants' motion to dismiss, or in the alternative for discovery

sanctions, (DE 130) is DENIED.  The government's motion to stay (DE 126) is GRANTED on the

terms outline above.

SO ORDERED, this the 14th day of January, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge