IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:12-CV-00136-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| | ) | |
| $307,970.00 IN U.S. CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the government's motion to compel discovery. (DE 186). Also before the court is claimants' motion to dismiss, or exclude, or for other appropriate sanctions, (DE 190), and the government's motion exclude or limit evidence, or for sanctions. (DE 192). In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court denies in part and grants in part the government's motion to compel. The court denies the parties' competing motions for sanctions.

## BACKGROUND

This case has a lengthy and contentious history summarized more fully in the court's prior orders. The government initiated this civil forfeiture July 12, 2012, by filing a complaint for forfeiture *in rem* against $307,970.00 in U.S. currency seized from Apolinar Garcia-Ancelmo during a traffic stop conducted February 16, 2012. The government asserts that defendant currency was used or intended to be used in exchange for controlled substances, represented proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of

Title II of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq. The government filed amended complaint July 31, 2012.[1]

In August 2012, Apolinar Garcia-Ancelmo, Cirila Pineda Garcia,[2] and Lucia Yasmin Covarrubias (together "claimants") filed claims contesting forfeiture. Claimants filed joint answer September 14, 2012. The court entered case management order ("CMO") November 20, 2012, which set the discovery deadline of March 14, 2013.

Thereafter, on January 28, 2013, claimants filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In response, on February 11, 2013, the government filed notice of automatic stay of time to file response under Rule (G)(6)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") until 21 days after claimants answered special interrogatories served upon them the same date. By order dated May 22, 2013, the court directed claimants to respond to the government's special interrogatories within 10 days of entry of the order. Pursuant to the May 22, 2013, order, all other discovery was stayed pending resolution of claimants' motion to dismiss.

On June 14, 2013, the government filed a motion to compel adequate responses to the special interrogatories it served upon claimants on February 11, 2013.[3] On August 13, 2013, the court granted in part the government's motion to compel, and directed claimants to file supplemental responses to certain special interrogatories served upon them. The order also stayed the

---

[1] The amended complaint corrected an allegation as to where the defendant currency was seized.

[2] Claimant Cirila Pineda Garcia is referred to in the case caption as Sirila Pineda Garcia. The correct spelling of claimant's name is Cirila Pineda Garcia.

[3] The government claimed that further information in response to the special interrogatories was needed to determine whether or not claimants had standing. In its motion, the government also requested stay of its obligation to respond to claimants' motion to dismiss until 21 days after claimants "fully responded" to its special interrogatories.

government's obligation to respond to claimants' motion to dismiss until 21 days after claimants served their supplemental responses to the government's special interrogatories. By text order dated September 27, 2013, the court denied claimants' motion to dismiss on the basis that the complaint provided sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.[4]

The court entered supplemental CMO on October 15, 2013. On January 23, 2014, the government filed a motion to stay, pending conclusion of a contemporaneous and related criminal investigation of one or more of the claimants. The court granted the government's motion, ultimately staying the case up to and through October 17, 2014. Upon expiration of stay, the court reset scheduling deadlines with discovery due by February 28, 2015, and motions due by March 31, 2015.

On January 30, 2015, claimants filed motion for summary judgment. On July 2, 2015, the court stayed all discovery pending partial resolution of claimants' motion for summary judgment. By order dated August 26, 2015, the court denied claimants' motion for summary judgment in part.[5] The court's August 26, 2015, order set discovery deadline of October 20, 2015, and indicated that the court would address other arguments contained in claimants' motion for summary judgment upon expiration of that deadline.

---

[4] Prior to the entry of the court's September 27, 2013, text order, the government filed a motion to strike, a motion for default judgment, and a motion to continue stay of response to claimants' motion to dismiss. In its text order dated September 27, 2013, the court also denied the government's motion to strike, motion for default judgment, and motion to continue stay.

[5] The court denied claimants' motion for summary judgment to the extent claimants argued that the government improperly filed suit without probable cause to believe the defendant funds were related to a criminal undertaking.

On October 27, 2015, government filed a second motion to stay proceedings, pending completion of a contemporaneous and related criminal investigation of all claimants. Thereafter, on November 10, 2015, claimants filed a motion to dismiss, as sanction for the government's alleged willful discovery violations. By order dated January 14, 2016, the court granted the government's motion to stay and denied claimants' motion to dismiss. The government filed a third motion to stay proceedings on May 19, 2016, which the court granted on June 28, 2016. The court ultimately stayed the case up to and including October 29, 2016.

Pursuant to Federal Rules of Civil Procedure 36 and 37, claimants filed a motion to compel production of documents relevant to two government's witnesses, or alternative motion to exclude their testimony on January 23, 2017. Thereafter, claimants filed a motion to quash or modify subpoenas on February 21, 2017, as amended February 24, 2017.

The court held telephonic hearing regarding claimants' motion to quash and motion for subpoenas on March 30, 2017. At hearing, the court granted in part and denied in part claimants' motion to compel or exclude. The court granted claimants' motion to the extent claimants sought the presentence report and psychiatric report of government witnesses, Thurman Ray Bohene, Jr. With regard to the other potential government witness, Hilaria Rodriguez, the court denied claimants' motion where no evidence established that the government withheld documents responsive to claimants' discovery requests. The court also denied claimants' motion to quash, on the basis that claimants lacked standing.

Following telephonic hearing, the court entered second supplemental CMO on April 10, 2017. Pursuant to supplemental CMO, the court set discovery deadline of October 2, 2017, and motions deadline of November 17, 2017. On August 18, 2017, the government filed a motion for

4

extension of time to complete discovery, which the court denied in part by text order dated September 5, 2017. The court allowed the parties an extension of time for expert discovery, and directed the parties to file a motion for entry of a consent order setting such new deadline.

At the parties' request, on September 8, 2017, Magistrate Judge Robert Jones B. Jones, Jr., held telephonic conference regarding new discovery dispute, which concluded in impasse. On September 11, 2017, the court entered an order modifying discovery deadlines. The order required reports from retained experts to be served by the parties no later than November 1, 2017, and set deadline for depositions of expert witnesses for November 22, 2017. The order also set dispositive motions deadline of December 15, 2017,.

The government filed the instant motion to compel discovery on September 12, 2017, together with a memorandum in support thereof and several exhibits. Claimants filed the instant motion to dismiss, alternativelya motion for other appropriate sanctions on September 29, 2017. On October 11, 2017, the government filed a motion to exclude certain evidence, alternatively a motion for other appropriate sanctions.

On November 21, 2017, the court extended the deadline for the parties to complete expert depositions to January 26, 2018, and the deadline to file dispositive motions to February 23, 2018.

**DISCUSSION**

A.   Motion to Compel

1.   Standard of Review

Federal Rule of Civil Procedure 37 provides that when a party fails to respond to discovery, the party seeking discovery can move for an order compelling production. Fed. R. Civ. P. 37(a)(3)(B). The trial court holds broad discretion when addressing a motion to compel discovery.

See LaRouche v. Nat'l Broadcasting Co., Inc., 780 F.2d 1134, 1139 (4th Cir. 1986) ("A motion to compel discovery is addressed to the sound discretion of the district court."); see also Lone Star Steakhouse & Saloon, Inc., v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial of granting a motion to compel discovery for abuse of discretion.").

Ordinarily, a "[p]art[y] may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within the scope of discovery need not be admissible in evidence to be discoverable." Id. "On motion or on its own, the court must limit the frequency or extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). When challenged, "[a] party claiming that a request is important to resolve [certain] issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them." Fed. R. Civ. P. 26, Advisory Committee Notes (2015 amend.).[6]

Relevance within the context of Rule 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund., Inc., v. Sanders, 437 U.S. 340, 351 (1978). "The court should and ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to

---

[6] The 2015 amendment to Federal Rule of Civil Procedure 26 changed the language in subsection (b)(1) in several ways described and set forth in the Advisory Committee Notes to the 2015 amendment. For example, the amendment "delete[d] the former provision authorizing the court, for good cause, to order discovery on any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26, Advisory Committee Notes (2015 amend.). While this deletion could be construed as narrowing what qualifies as "relevant," the Advisory Committee Notes suggest otherwise, "given a proper understanding of what is relevant to a claim or defense." Id. As such, the court continues to rely upon case law set forth in the text predating the 2015 amendment to the rule, with respect to the meaning of the term "relevant."

anything that is or may become an issue in the litigation." Id. at 351, n. 12 (internal quotations omitted).

2. Analysis

The government seeks to compel production of claimants' federal income tax returns for the years 2007 through 2012. Relevant to the government's motion to compel, the government previously served upon claimants requests for production of claimants' tax returns and other financial documents, including IRS 1099 forms, for the years 2007 through 2012. The government also requested that claimants execute IRS Forms 4506 and 8821 ("IRS authorization forms") authorizing the IRS to release claimants' tax information directly to the government.

In November of 2014, claimants produced several documents in response to the government's requests. First, claimants produced tax returns of Apolinar Garcia-Ancelmo and Cirila Pineda Garcia (together the "Garcia claimants") for the years 2008 through 2011, as well as 1099 forms issued to the Garcia claimants for the years 2011 and 2012. In January of 2015, claimants supplemented their discovery responses and produced tax returns of claimant Covarrubias for the years 2009, 2011, 2012, and 2013. To date, claimants have not executed the IRS authorization forms.

To supplement its written discovery requests, the government also sought information concerning claimants' income and tax liability from claimants' tax preparer Sylvia Miller, and claimants' payroll bookkeeper Justo Urena. The government took depositions of these individuals on July 25 and August 2, 2017, respectively.

While the Fourth Circuit has not developed a clear rule as to the discoverability of tax returns, disclosure of tax returns is disfavored. See Susko v. City of Weirton, No. 5:09-CV-1, 2010

WL 3584425, at *4 (N.D.W.Va., Sept. 10, 2010) ("[J]udicial consensus exists that, as a matter of policy, great caution should be exercised in ordering the disclosure of tax returns[.]"); see also Eastern Auto Distribs., Inc., v. Peugeot Motors of Am., Inc., 96 F.R.D. 147, 148–49 (E.D.Va. 1982) ("[A]" 'qualified' privilege emerges from the case law that disfavors the disclosure of income tax returns as a matter of general federal policy[.]").

"The majority rule that has emerged from federal case law is that a two-prong test should be applied to determine if qualified privilege protecting tax returns is overcome." Interstate Narrow Fabrics, Inc., v. Century USA, Inc., No. 1:02CV00146, 2004 WL 444570, at *2 (M.D.N.C., Feb. 24, 2004). "Under this test, tax returns are discoverable if (1) they are relevant to a matter in dispute; and (2) they are needed, because the information is not available from other sources." Id. The party seeking disclosure of the tax returns carries the burden of showing that the tax returns are relevant, and the party opposing disclosure carries the burden of identifying an alternative source of the information. Id.

In the instant case, the government contends that claimants' tax returns provide information as to claimants' business profits, and therefore are relevant to issues regarding the source of the defendant currency. Where claimants' tax returns provide information concerning profits of their farm labor business, the court agrees that the tax returns are relevant for discovery purposes. See e.g., Oppenheimer Fund., 437 U.S. at 351 (noting that under Rule 26, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.")

Notwithstanding the potential relevancy of their tax returns, claimants argue that information contained in their tax returns is available from other sources already provided to the government.

Specifically, claimants contend that copies of their filed tax returns, deposition testimony from Miller and Urena, and other financial documentation produced to the government provide the same information contained in their tax returns filed with the IRS.

The government argues that these alternative sources are unreliable and inaccurate. The government points to the fact that in other, unrelated litigation, claimants produced tax information that is inconsistent with the tax information produced in this case.[7] The government also highlights that in her deposition, Miller testified that every year she receives IRS notices or adjustments regarding claimants' tax returns. (DE 187-5, Miller Depo, 18:11–25). Miller also testified that due to a computer crash, if the government needed to obtain claimants' tax returns prior to 2010, then it would "just have to get [them] from the IRS." (Id. at 47:25–48:9).

Claimants contend that the tax returns they produced are reliable and accurate. To support their position, claimants highlight that during his deposition, Urena testified that he verifies information provided to him and that claimants' tax returns are accurate. (DE 188-1, Urena Depo, 19:9–20:14; 105:2–106:25). Where the Garcia claimants have produced tax information for years 2008 through 2012,[8] and claimant Covarrubias has produced tax information for the years 2009, 2011, 2012, and 2013,[9] court finds no basis to compel production of tax returns for these years. Claimants have provided testimony that the information contained in these documents is accurate.

---

[7] More specifically, the government points to Wayne County Superior Court case Liberty Mutual Insurance Corp. v. Cirila Pineda Garcia, No. 12-CVS-250 ("Liberty Mutual"). Liberty Mutual concerned workers' compensation insurance coverage provided to Cirila Pineda Garcia from August 14, 2099 to April 19, 2011. In Liberty Mutual, claimants reported that they had gross receipts in the amount of $348,603 and $218,411 for tax years 2009 and 2010, respectively. In contrast, in the present litigation, claimants reported to the government that they had gross receipts in the amount of $2,645,033 and $2,624,044 for tax years 2009 and 2010, respectively.

[8] The Garcia claimants have produced copies of their tax returns for the years 2008 through 2011, as well as 1099 forms issued to them for the years 2011 and 2012.

[9] Claimant Covarrubias has produced copies of her tax returns for the years 2009, 2011, 2012, and 2013.

See e.g., United States v. Palin, 874 F.3d 418, (4th Cir. 2017) ("Determinations of credibility lie within the sole province of the fact finder.") (internal citations omitted). Therefore, to the extent the government seeks production of claimants' tax returns for these years, the government's motion to compel is denied.

However, the Garcia claimants have not produced tax information for the year 2007 and claimant Covarrubias has not produced tax information for the years 2007, 2008, and 2010. Furthermore, Miller testified that she is unable to provide information concerning claimants' tax returns for any year prior to 2010. (DE 187-5, Miller Depo, 47:25–48:9). Furthermore, claimants have not demonstrated that financial information contained in these tax returns for these years is otherwise available to the government. Therefore, the court grants the government's motion to compel, to the extent the government seeks production of the Garcia claimants' 2007 tax return and claimant Covarrubias's 2007, 2008, and 2010 tax returns. See Interstate Narrow Fabrics, 2004 WL 444570, at *3 ("Given the incomplete, and in some cases, unverified, nature of the financial information already provided to [plaintiff] . . . [defendant] has not carried his burden of showing that the financial information contained in his income tax returns is otherwise available to [plaintiff]. . . . [Thus,] [a]ny qualified privilege protecting [defendant's] tax returns has been overcome, and the returns are therefore discoverable.").

B.  Motion for Sanctions

Federal Rule of Civil Procedure 37 grants district courts wide discretion to impose sanctions for discovery violations. Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37(c)(1). "In

addition or instead of this sanction, the court, on motion and after giving an opportunity to be heard: . . . (C) may impose other appropriate sanctions, including [dismissing the action or proceeding in whole or in part]." Id.

As relevant here, Rule 26(e) provides that "[a] party who has . . . responded to an interrogatory . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information that has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e).

However, "Rule 37(c)(1) provides two exceptions to the general rule excluding evidence that a party seeks to offer but has failed to properly disclose: (1) when the failure to disclose is substantially justified, and (2) when the nondisclosure [or belated disclosure] is harmless." S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 596 (4th Cir. 2003) (internal quotations omitted). "[I]n determining whether a party's nondisclosure or untimely disclosure of evidence is substantially justified or harmless," courts are guided by the following factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

Bresler v. Wilmington Trust Co., 855 F.3d 178, 190 (4th Cir. 2017) (citing S. States, 318 F.3d at 597).[10] Each party has moved for sanctions pursuant to Rule 37. The court turns first to claimants' motion.

---

[10] In its response to claimants' motion, the government suggests that the court should also consider whether or not a party acted in bad faith. Contrary to the government's suggestion, "Rule 37(c)(1) does not require a finding of bad faith or callous disregard of the discovery rules," for a court to issue sanctions. Hoyle v. Freightliner, LLC, 650 F.3d 321, 330 (4th Cir. 2001) (internal citations omitted).

11

1. Claimants' Motion for Sanctions (DE 190)

Facts relevant to claimants' motion for sanctions are as follows. On November 26, 2014, the government responded to claimants' interrogatories and requests for production. Through these interrogatories, claimants asked the government to identify any individual involved in investigation concerning claimants, as well as any individual who had information tending to connect the defendant currency to drug sales. In response to claimants' interrogatories, the government identified Sergeant Matt Miller ("Sergeant Miller") of the Wayne County Sheriff's Office, and three Drug Enforcement Administration ("DEA") agents. In its responses, the government referenced reports made by these individuals, as well as dash-camera video footage from the traffic stop which lead to the seizure of the defendant currency. During 2015 and 2016, the government supplemented its discovery responses several times.

On September 14, 2017, the government served by mail its fifth supplemental response to claimants' interrogatories and third supplemental response to claimants' requests for production. At that time, the government indicated for the first time that it intended to rely on a purported drug dog alert. In its supplemental responses, the government also identified Officer Kenny Prevost ("Officer Prevost") as the handler of the drug dog.

Claimants contend that sanctions must issue where the government's initial November 2014 responses did not mention Officer Prevost, a drug dog, or the Goldsboro Police Department.[11] Claimants argue that the government's belated disclosure of this information was willful and warrants dismissal of this action, exclusion of evidence relating to the drug dog, or some other appropriate sanction.

---

[11] Officer Prevost is an officer with the Goldsboro Police Department.

Importantly, Rule 37(c) provides for the sanction of a party where such party fails to provide information or identify a witness as required by Rule 26(e).[12] Here, on August 18, 2017, Sergeant Miller reviewed the dash-camera footage with counsel for the government and tentatively identified the dog handler as Officer Prevost. Confirmation of Officer Prevost's identity and his contact information was provided to the government on September 11, 2017. The government disclosed to claimants information regarding the drug dog and Officer Prevost's identity on September 14, 2017.[13]

Pursuant to Rule 26(e), the government supplemented its responses to claimants' interrogatories and requests for production by identifying the name of the dog handler three days after the government verified that information. While earlier disclosure of this information could have been beneficial to claimants, the government promptly supplemented its initial disclosures once it received confirmation of Officer Prevost's identity. The government disclosed this information prior to the October 2, 2017, fact discovery deadline. Cf. Rowland v. Am. Gen. Fin. Inc., 340 F.3d 187, 196 (4th Cir. 2003) (suggesting that disclosures are untimely when they occur after the discovery deadline); see also EEOC v. Dolgencorp, LLC, 196 F. Supp. 3d 783, 795 (E.D. Tenn. 2016) (noting that a Rule 26(e) supplementation is generally "timely" if made within 30 days of learning new information and prior to the discovery deadline). Where the government timely made

---

[12] Rule 37(c) also provides for sanction where a party fails to provide information or identify a witness as required by Rule 26(a). However, Rule 26(a) does not provide a basis for sanction here where claimants seek sanction based on the government's failure to supplement its responses to claimants' interrogatories and requests for production. See Fed. R. Civ. P. 26(e). Forfeiture actions in rem arising from a federal statute are also exempt from initial disclosure under Rule 26(a). See Fed. R. Civ. P. 26(a)(1)(B).

[13] Claimants contend that the government failed to disclose records of the drug dog's certification or training. The government indicated in its response that these materials have been produced to claimants.

supplementations, it did not violate obligations imposed by Rule 26(e). Accordingly, Rule 37 sanctions against the government are inappropriate in the instant case.

Notwithstanding the foregoing, consideration of the Southern States factors also reveals that exclusion of Officer Prevost is not warranted under the present circumstances. First, any surprise resulting from the government's belated disclosure of evidence concerning the drug dog and Officer Prevost is minimal. Claimants were provided a copy of dash-camera video in November of 2014. The dash-camera video footage depicted the drug dog sniffing the defendant currency at the scene of the traffic stop. This same video footage prompted the government to seek out information regarding the dog and Officer Prevost's identity. While the video footage did not alert claimants that the government intended to rely on the drug dog and the government never objected to claimants' representations that there was no drug dog alert connecting the defendant currency to drug sales (DE 22, at 9), the government did not obtain knowledge of the dog handler's identity until August 18, 2017. The government disclosed this information to claimants on September 14, 2017.

Second, any potential surprise resulting from the alleged belated disclosure of Officer Prevost is, to some extent, curable. Here, the government represents that it intends to offer Officer Prevost as an expert witness. (DE 196, at 9–10).[14] To this extent, any surprise resulting from the belated disclosure of Officer Prevost as a potential witness is minimized since claimants have until January 26, 2018, to depose Officer Prevost.

---

[14] Claimants contend that Officer Prevost will also offer fact testimony. The government indicates that any fact testimony offered by Officer Prevost is captured in the dash-camera video, which was disclosed to claimants in November of 2014. To the extent claimants need to undertake additional fact discovery concerning the dog alert, the government notes that it has produced the dog's certification and training records. The government offers that if claimants need to undertake further fact discovery on this issue, it consents to unilateral extension of fact discovery for this purpose. (DE 196, at 11, n.9).

Next, evidence of the drug dog alert is important. At trial, the government is prepared to present evidence that claimant Garcia was involved in drug trafficking activity prior to the seizure of the defendant currency. As the government indicates, evidence of the drug dog alert is important because it tends to connect the defendant currency to drug sales, a central dispute in this matter. Cf. Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014) (indicating that evidence which would not assist a trier of fact weighs in favor of exclusion under a Southern States analysis).

Lastly, the government indicates that its failure to provide earlier disclosure of Officer Prevost "was both unknowing and unintentional." (DE 196, at 11). The government explains, that given continued stays of this case, "by the time [it] began preparing its discovery responses, at least two years had elapsed since the [dash-camera] video first came into [its] possession." (DE 196, at 2). In preparing its discovery responses, the government relied primarily on reports written by law enforcement officers involved in the seizure of the defendant currency, which, significantly, make no reference to the drug dog alert or Officer Prevost. The government discovered the dog alert in June of 2017 when new counsel was assigned to assist with the case. At that time, the government solicited assistance from Sergeant Miller, who preliminarily identified Officer Prevost on August 18, 2017. The government did not receive confirmation of Officer Prevost's identity until September 11, 2017.

In sum, even if the government violated Rule 26(e), consideration of the Southern States factors supports denying claimants' motion for sanctions.

To the extent claimants seek monetary sanction for the government's allegedly belated disclosure, the court also finds such sanction inappropriate under the present circumstances. Importantly, Rule 37 permits the court to order the "payment of reasonable expenses . . . caused by

[a belated disclosure]," as sanction for violation of Rule 26(e). Any belated disclosure of Officer Prevost or the drug dog alert will not cause claimants to incur any expense they would not have incurred had the disclosures been made earlier. Accordingly, the court also declines to issue monetary sanction against the government.

    2.    Government's Motion for Sanctions (DE 192)

The government contends that claimants failed to timely supplement their interrogatories as required by Rule 26(e). Relevant to the government's motion, pursuant to Supplemental Rule (G)(6)(a), on February 11, 2013, the government served special interrogatories on each of the claimants. Claimants ultimately responded on June 5, 2013. At the court's direction, claimants filed supplemental responses to the government's special interrogatories on August 24, 2013.[15] In their supplemental responses, claimants stated that "[t]he funds seized by the government . . . are profits from lawful business ventures . . . . Attached hereto are official documents demonstrating when the proceeds were received . . . and include the identity of the person(s) from whom the funds were acquired." (DE 54-3, at 3–4). Attached to claimants' responses were as series of IRS 1099 forms from the year 2011, as well as two IRS W-2 forms for claimant Covarrubias.

Pursuant to CMO entered October 15, 2013, the government served upon claimants its first set of interrogatories on November 15, 2013. In their responses to these interrogatories, claimants again indicated that the defendant currency represented legitimate business profits. To support this

---

[15]     Claimants provided virtually no information in their responses to the government's special interrogatories. As a result, the government filed a motion to compel more adequate responses on June 14, 2013. The court granted the government's motion to compel and directed claimants to respond to the special interrogatories.

contention, claimants referred to financial documents previously provided to the government, which included financial documentation and tax information for multiple years.[16]

On September 26, 2017, the government deposed claimants Cirila Pineda Garcia and Covarrubias. At her deposition, claimant Covvarrubias testified that the defendant currency was accumulated over the years 2010 and 2011.[17] At her deposition, Cirila Pineda Garcia testified that claimants began accumulating the defendant currency in 2009. (DE 197-8, Cirila Pineda Garcia Depo., at 37–38). Later in her deposition, claimant Cirila Pineda Garcia also testified that the defendant currency represented savings accumulated throughout the entire duration of the claimants' farm labor business, which began operation in 1996. (Id.).

The government contends that where claimants' initial interrogatory responses suggest that the defendant currency only represents business profits accumulated in the year 2011, claimants were required by Rule 26(e) to supplement their responses to indicate that the defendant currency represents profits accumulated over other years as well.

Contrary to the government's suggestion, claimants did supplement their responses to the government's initial special interrogatories to indicate that the defendant currency represented business profits for multiple years. In responses dated November 12, 2014, claimants referred to financial documents spanning multiple years to support their position regarding the source of the defendant currency. (See DE 193-6, at 13–14) ("As to the source of the funds, [claimants] have

---

[16] The government suggests that claimants' responses to interrogatories served November 13, 2015, refer only to financial documentation for the year 2011. Contrary to the government's suggestion, claimants did not solely refer to documents for the year 2011. (See DE 193-6 at 13–14) (indicating that claimants already provided information regarding the source of the defendant currency "in the form of 1099 tax documents."); (see also DE 197-1, Ward Decl. ¶ 4-5).

[17] Claimant Covarrubias admitted however that she lacked actual knowledge of relevant years because she was not involved in the farm labor business until 2011. (DE 197-3, Covarrubias Depo., at 14–15).

already provided this information to the government in the form of 1099 tax documents . . . and bank account records[.]). Although claimants did not provide information dating back to 1996, through claimants' responses and the financial documentation produced to the government, the government was made aware that claimants' position is that the defendant currency represents business profits for years other than 2011. In any event, the government was made aware of this information during the depositions of claimants Cirila Pineda Garcia and Covvarrubias. Since this information was made known to the government during the discovery period, the court finds no basis to issue sanction against claimants pursuant to Rule 37. See Fed. R. Civ. P. 26(e) ("A party . . . must supplement or correct [a] disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other part[y] during the discovery process. . . .") (emphasis added); Cf. Rowland, 340 F.3d at 196 (suggesting that disclosures are untimely when they occur after the discovery deadline). Therefore, the court denies the government's motion for sanctions.

**CONCLUSION**

Based on the foregoing, the court GRANTS IN PART and DENIES IN PART the government's motion to compel. (DE 186). The court also DENIES claimants' motion for sanctions (DE 190), and the government's motion for sanctions. (DE 192). Claimants are DIRECTED to produce to the government the Garcia claimants' 2007 tax return and claimant Covarrubias's 2007, 2008, and 2010 tax returns by January 15, 2018. The parties are reminded that deadline to file dispostive motions is February 23, 2018. (See DE 206).

SO ORDERED, this the 18th day of December, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge